**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

BLAKE HARRIS LAW, LLC,
a Florida limited liability
company,

     *Plaintiff*,

vs.

KEVIN WILLIAM WESSELL,
individually and as an owner, officer,
or manager of Lawyers Limited, PLLC,
Lawyers Limited Inc., and
Liberty Business Group, Inc.,

LAWYERS LIMITED PLLC,
a Washington D.C. professional
limited liability company;

LAWYERS LIMITED INC.,
a Nevada corporation; and,

LIBERTY BUSINESS GROUP, INC.,
a Nevada corporation.

     *Defendants*.

CASE NO. 25-cv-62552

---

## COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL

Plaintiff, Blake Harris Law, LLC, by and through its undersigned counsel, brings this action under the Lanham Act, 15 U.S.C. § 1125(a), and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, against Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc. (collectively, "Defendants") for injunctive and equitable relief, declaratory relief, actual damages, and attorneys' fees, and states:

1

## INTRODUCTION

1.      This action is brought to put an end to a false advertising scheme perpetrated by Defendants against consumers in the market for asset protection services.

2.      The Defendants' fraudulent scheme is as follows:

        a.      Kevin Wessell, a non-lawyer and known fraudster, operates a website, lawyerslimited.com, offering asset protection services. The stated services include "Pre-Litigation Risk Assessment & Planning," "Offshore Banking & Entity Formation," "Domestic & Offshore Asset Protection Trusts," "LLC Structuring for Wealth Protection," and "Integrated Estate & Asset Protection Planning." These services are legal services in the sense that only a licensed attorney can provide them. Wessell's picture appears on the website, but since his name is associated with another fraud similar to the one complained of here, Wessell is identified on the website as "Our CEO"; his name is never used or disclosed to the customer.

        b.      According to its website, Lawyers Limited PLLC is a law firm and Lawyers Limited has been trusted since 1906. These representations are false, or at best, intentionally misleading. Wessell is not a lawyer, and therefore, could not be the CEO of Lawyers Limited PLLC; Lawyers Limited PLLC is not the company who customers shopping for services on lawyerslimited.com will engage with; and while Lawyers Limited Inc. is derived from a company that was formed in 1906, Wessell and his cohorts took the company over and changed its name from Eagle Salt Works to Lawyers Limited and changed its offerings from salt to asset protection. This was all a scheme to mislead customers as to the experience and reputation of the company.

        c.      The website (including the name itself) is designed to lull customers into a false sense of security that if they engage Lawyers Limited to provide the services described on the website, those services will be provided by a law firm or by "elite legal professionals."

> d.    The website terms of service, hidden deep in the privacy policy page, contain intentionally misleading and contradictory disclaimers in which the customer is falsely told that the services Lawyers Limited is offering and the customer is purchasing are not services that only a licensed attorney can provide. The engagement letter the customer ultimately signs, not with Lawyers Limited, PLLC or Lawyers Limited, Inc., but with Liberty Business Group, Inc., also contradictorily and falsely disclaims – like the Player Queen in *Hamlet* as observed by Queen Gertrude – that they do not provide the services that a licensed attorney provides.

3.    Defendants' false and deceptive marketing and advertising practices harm consumers in the state of Florida and across the United States.

4.    Defendants' practices described herein also target and harm Plaintiff, specifically. Plaintiff is a legitimate, licensed law firm employing attorneys who are actually qualified to perform services like the ones Lawyers Limited offers, and who do actually perform those services. Defendants' practices described herein have and continue to unfairly compete with Plaintiff and divert business away from Plaintiff, resulting in lost profits.

## PARTIES

5.    Plaintiff, Blake Harris Law, LLC is a law firm headquartered on the 28th floor of 201 South Biscayne Blvd, Miami, Florida. BH Law was founded in 2013.

6.    Plaintiff's founder, Shannon Blake Harris, is a licensed attorney in Florida and Colorado, and is recognized as a leading authority in the field of international asset protection.

7.    Defendant, Kevin Wessell ("Wessell"), is a non-lawyer residing at 4411 N.E. 25th Ave, Lighthouse Point, Florida, who holds himself out as an expert in legal asset protection.

8.    Defendant Lawyers Limited PLLC is a company that was registered in 2025 and headquartered at 300 New Jersey Ave NW, Suite 300, Washington D.C.

9.     Defendant Lawyers Limited Inc. is a Nevada corporation headquartered at 701 S Carson St., Suite 200, Carson City, Nevada.

10.     Lawyers Limited PLLC and Lawyers Limited Inc. maintain an office at 4701 N Federal Highway #300, Pompano Beach, Florida.

11.     Defendant Liberty Business Group, Inc. is a Nevada corporation that is also headquartered at 701 S. Carson St., Suite 200, Carson City, Nevada and that maintains a principal office in Florida at 153 East Flagler St., #510, Miami, Florida.

## JURISDICTION AND VENUE

12.     Plaintiff's claim for false and misleading advertising asserted in Count I arises under the Lanham Act, 15 U.S.C. §1125(a). Accordingly, this Court has original subject matter jurisdiction over the false and misleading advertising claim.

13.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for claims so related to Plaintiff's Lanham Act claims that they form part of the same case or controversy. Plaintiff's claim for deceptive and unfair trade practices asserted in Count II arises under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (hereinafter referred to as "FDUPTA"), and is so related to the federal claim asserted in Count I that it forms part of the same case or controversy. Likewise, Plaintiff's civil conspiracy claim asserted in Count III and declaratory judgment action in Count IV arise from the same nucleus of operative facts as Counts I and II.

14.     Defendants have purposefully availed themselves of the privilege of transacting business in the State of Florida and in this District, including by purposefully and continuously promoting, marketing, advertising and selling services to residents in this District through lawyerslimited.com and their social media accounts.

4

15.     This Court has personal jurisdiction over Defendant Wessell because he is a resident of this District and regularly transacts business in this District. Wessell's activities have had a substantial, direct, and reasonably foreseeable effect on business and commerce in this District, and on interstate commerce.

16.     This Court has personal jurisdiction over Defendant Lawyers Limited PLLC because it regularly transacts business in this District and maintains an office in this District. Lawyers Limited PLLC's activities have had a substantial, direct, and reasonably foreseeable effect on business and commerce in this District, and on interstate commerce.

17.     This Court has personal jurisdiction over Defendant Lawyers Limited Inc. because it regularly transacts business in this District and maintains an office in this District. Its activities have had a substantial, direct, and reasonably foreseeable effect on business and commerce in this District, and on interstate commerce.

18.     This Court has personal jurisdiction over Defendant Liberty Business Group because it regularly transacts business in this District and maintains an office in this District. Its activities have had a substantial, direct, and reasonably foreseeable effect on business and commerce in this District, and on interstate commerce.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

20.     Plaintiff is in the business of providing comprehensive asset protection legal services to clients in Florida and across the United States, specializing in offshore asset protection, including formation and funding of Cook Islands trusts.

21.     Upon information and belief, Defendants are in the business of providing comprehensive asset protection services to clients in Florida and across the United States.

22.     However, despite performing the services identified above, all of which are clearly services that should be performed by licensed lawyers, Defendants are not a law firm or lawyers, despite creating the appearance that they operate as one.

23.     Upon information and belief, Plaintiff and Defendants are the primary U.S. entities engaged in the formation and funding of Cook Islands trusts and are each other's primary competition in this niche market.

***Wessell's History of Fraud***

24.     Wessell is a non-lawyer with a documented history of perpetuating on his customers and the general public a fraudulent asset protection scheme.

25.     In *Alexander v. Incway Corp.*, the United States District Court for the Central District of California determined that Wessell "intentionally misrepresented and concealed important facts as part of a fraudulent asset protection scheme" and that he violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The District Court identified Wessell as the "mastermind behind the scheme." No. CV 11-8851 DSF VBKX, 2013 WL 5603932 (C.D. Cal. Oct. 11, 2013), *aff'd in part, rev'd in part and remanded*, 633 Fed. Appx. 472 (9th Cir. 2016).[1]

26.     Wessell's fraudulent enterprise operated under the pretense of providing asset protection services, which Wessell publicly presented himself as an expert in.

27.     Wessell solicited clients through free online seminars on "how to set up an asset protection plan" with the specific intent to defraud.

---

[1] The Court of Appeals for the Ninth Circuit affirmed the district court's findings but reversed only as to the amount of punitive damages assessed against Wessell.

28.     The court found that Wessell operated a network of interrelated corporate entities (including Companies Inc., and 1-800-Companies, businesses related to the current scheme and discussed further below) to further his fraudulent scheme and create an illusion of a multi-departmental operation while maintaining personal control and concealing true ownership.

29.     Wessell and his associates convinced the plaintiff in *Alexander* to transfer over $500,000.00 to "The Alps", a fictitious entity, which Wessell and his associates touted as a legitimate, regulated Swedish credit union.

30.     "The Alps" was an undercapitalized shell company that operated out of Valencia, California, with no employees or physical address in Sweden.

31.     Funds transferred to "The Alps" were not invested in a legitimate financial institution. Instead, they were used to buy, sell, and lend money on U.S. real estate ventures, with approximately 95% of the loans located in Washington.

32.     Wessell concealed his directorship and control over "The Alps".

33.     The court found that Wessell "intentionally or recklessly misled" the plaintiff and committed "intentional misrepresentation, concealment and suppression of facts".

34.     The court's opinion includes direct judicial findings on Wessell's character, noting that his deposition testimony was "the most evasive the court has experienced in thirty-three years", and that Wessell "consistently was evasive, or simply lied, at trial".

### Defendants' False, Misleading, and Deceptive Marketing and Advertising Practices

35.     Thwarted in that fraudulent scheme by the Federal courts in California, Wessell has moved on to the scheme complained of herein.

36.     Wessell owns, operates, and manages a network of entities and associated brands that market, advertise, and sell asset protection services to consumers in Florida and nationwide.

37.     Defendant Lawyers Limited PLLC, a business registered in Washington D.C., together with Lawyers Limited Inc., a purported "affiliate" or "service" of Lawyers Limited PLLC, incorporated in Nevada, serve as the front for Defendants' business activities.

38.     Upon information and belief, Lawyers Limited PLLC's, Lawyers Limited Inc., and Liberty Business Group's statuses as separate/independently registered entities is a legal fiction. The entities are one in the same and operate together under the brand name "Lawyers Limited." All are owned and operated by Wessell.

39.     lawyerslimited.com explicitly advertises purported other "ventures" of Lawyers Limited, including Offshore Company, Asset Protection Planners, 1-800-Company, and Companies Incorporated (hereinafter referred to collectively as "Other Ventures").[2] These Other Ventures are explicitly identified as "A Service of Lawyers Limited."

40.     The website for Liberty Business Group is libertybusinessgroup.com, and similarly states that "we form corporations, LLCs, and trusts worldwide." The Liberty Business Group website similarly touts its affiliation with the Other Ventures.

41.     Upon information and belief, the Other Ventures are owned, operated, and controlled by Wessell.

42.     Defendants deceptively create the illusion of a multi-state, multi-departmental operation as part of their false and misleading advertising scheme.

---

[2] https://www.offshorecompany.com/
https://www.assetprotectionplanners.com/
https://www.1800company.com/
https://www.companiesinc.com/
Companies Inc. and 1-800-Company were implicated as part of Wessell's previous fraudulent asset protection scheme, see Paragraph 28.

43.     Defendants intentionally and deceptively market and advertise legal services and blur the lines between the purported services of Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and the Other Ventures.

44.     In reality, Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and the Other Ventures are all one in the same, and offer services that only a licensed attorney is allowed to provide.

45.     Defendants' business model is built on deception; they are using the credibility and professional veneer of a law firm and legal professionals to promote, market, advertise, and sell murky asset protection services to consumers that they insist are non-legal in nature.

46.     The "About Us" section of lawyerslimited.com states that:

"...We have lawyers and experienced consultants on staff who are passionate about protecting the assets of our clients. In addition, our services are limited in scope to asset protection from lawsuits. Beyond that, our organization has an 'Unlimited' passion to serve our clients..."

47.     This statement is false and misleading. Upon information and belief, Lawyers Limited PLLC has at most a single licensed attorney on staff, Yonathan Amselem. Lawyers Limited PLLC does not have "lawyers" (plural) on staff. And Mr. Amselem does not perform the services customers visiting the lawyerslimited.com website purchase; those services are ultimately provided by non-lawyers.

48.     Elsewhere, Mr. Amselem is identified as "Our Attorney," and in a YouTube video posted by Lawyers Limited PLLC, is identified as, "our own in-house asset protection attorney," suggesting that he is providing counsel to the entities themselves, not to their clients.

49.     Defendants deceptively claim that "Since 1906, Lawyers Limited has served thousands of happy clients" on lawyerslimited.com. The truth is that Defendants acquired an aged corporation established in 1906 and changed the name to Lawyers Limited to give consumers a

false impression of an established corporate history. Notably the original company had nothing to do with the practice of law or asset protection.[3] From lawyerslimited.com:



50.     On lawyerslimited.com, Defendants falsely claim to have over 117 years of legal expertise. According to the Florida Bar website, Mr. Amselem was admitted to the Florida Bar in 2013, but his membership lapsed and he is not eligible to practice law in Florida. It seems that Mr. Amselem was admitted to the Washington D.C. bar in 2014.

51.     Liberty Business Group similarly touts the 1906 founding date, and states that it has "lawyers" (plural) on staff.

52.     Defendants advertise and promote "attorney-client privileged reviews of your personal and business exposure" and "core legal services" via lawyerslimited.com.

53.     Defendants know these are services that can only be performed by a licensed attorney. They have been told so by the USPTO. Wessell actually applied for a trademark for

---

[3] They offer this service to their customers. From www.companiesinc.com/shelf-corporation-llc/ (last accessed December 9, 2025):

> The definition of a shelf corporation or aged company is a corporation, LLC or similar legal entity filed on a prior date and put on the "shelf" to age. You will also hear people refer to such an entity as a shelf LLC, ready made corporation or aged corporation. As such, you can acquire an existing, older legal entity rather than a freshly established one. Therefore, you can get immediate corporate history, in a fast, easy and legal manner.

"Asset Protection Planners," and he was denied registration of this mark for several reasons, one of which was that the website specimens he submitted caused the Examining Attorney to conclude and to advise Wessell in an Office Action that "[t]he services associated with the proposed mark are legal services provided by an attorney."

54.     On the TrustPilot page for lawyerslimited.com, the description, indicating it was written by the company, identifies it as, "[a]sset protection attorneys and consultants that helps [*sic*] businesspeople protect themselves from lawsuits."[4]

55.     Despite touting that they have employees all over the country, and marketing legal services nationwide and abroad, the "core legal services" advertised by Defendants on lawyerslimited.com are not provided by licensed attorneys.

56.     The "privacy policy" on lawyerslimited.com (which is properly understood as Terms of Service and does not contain a true privacy policy, hereinafter referred to as "Terms of Service") exposes the inherent deception at the core of Defendants' operation.

57.     First, the Terms of Service, deeply imbedded within the lawyerslimited.com website and not made readily apparent, are presented as a "privacy policy" which is intentionally confusing, obfuscatory, and misleading in and of itself, as it would cause consumers to assume they only need to read it if they are concerned about data use policies.

58.     These Terms of Service actually cover more than mere data use policies; in fact, they contain broad disclaimers that Defendants would rely on if it was suggested that they were engaging in the unlicensed practice of law or illegally associating for the purposes of collecting or sharing legal fees. They state, in part, with emphasis added:

---

[4] https://www.trustpilot.com/review/lawyerslimited.com (last accessed December 9, 2025).

**LEGAL OR FINANCIAL ADVICE AND REPRESENTATION**

"When using our service, **you will be acting as your own attorney**. LL completes information on the required forms based on the information you have provided to us in your "Request for Incorporation" or "LLC Formation" submission and files the requisite forms with the appropriate state, provincial or federal agency. By providing you with this service, **LL, its advisors, agents, representatives, and employees are not rendering any legal, tax or otherwise professional advice or service**, and no representations or warranties, express or implied, are given regarding the legal or other consequences resulting from the use of our services or forms.

. . . .

**LL, its advisers, agents, representatives, and employees are not engaged in the practice of law and cannot provide you with legal advice**. Although LL expends great efforts and respects the confidential nature of the information you are submitting to us, **NO SPECIAL RELATIONSHIP or privilege exists between LL and you, including but not limited to any Attorney-Client relationship that might exist had you consulted with a licensed attorney**.

. . . .

**If you speak with an attorney affiliated with LL, you agree that nothing should be taken as legal advice for any individual case or situation**. **LL and/or affiliated attorneys provide general information only, are not tax advisors, and have not and will not provide you with any legal, tax or compliance related advice with respect to our services**. You will need to seek independent professional legal and tax advice. Most or all entities created LL are intended to be tax neutral and that any income earned, whether from a domestic or international entity, is reportable in the year earned regardless of whether or not such funds are withdrawn from the entity or repatriated in the case of international entities. **Further, any information obtained from LL and/or affiliated companies and/or attorney(s) is not intended to create**, and discussion, receipt, viewing or other director or indirect interaction does not constitute, **an attorney-client relationship** and any fees paid are not to be considered legal fees.

. . . .

As with all important business matters, LL, its advisers, agents, representatives, and employees strongly recommend that you consult with an attorney licensed to practice law and a licensed CPA in the applicable jurisdiction in regards to the formation of your corporation, LLC, trust or other product or service we provide and its continued operations."[5]

59.     Defendants know that these disclaimers – which are mirrored on the Other Ventures' websites – cannot conjure a reality where the services Defendants are providing can be

---

[5] https://lawyerslimited.com/privacy-policy (last accessed December 9, 2025).

provided by a non-lawyer. They exist only so that when Defendants are exposed for the unlicensed practice of law or of sharing revenue with non-attorneys for the performance of legal services, Defendants can say that they disclosed that they were not practicing law or performing legal services and that for legal services, the customers should separately seek the advice of a licensed attorney. These disclaimers are presented to the consumer in such a way that the consumer will dismiss them as unimportant and purchase Defendants' services with a false sense of security.

60.     The Liberty Business Group website itself takes a dismissive attitude toward complying with Bar requirements for licensed attorneys, viewing those requirements as a nuisance, rather than strict laws/regulations to be followed for the benefit of the consumer public:

"Okay, now for some housekeeping. As not all of our shareholders are attorneys, the good old Florida Bar says we have to tell you as we have attorneys on staff but are not a law firm and that our company does not offer legal, tax or other professional services. For those services, seek the appropriate attorney or accountant. There, we said it. Beyond that, our organization has a passion to serve our clients. Try us. You'll be glad you did."

61.     Elsewhere they say:

"Liberty Business Group is not a law firm, tax advisor or financial planner and does not give legal, tax or financial planning advice. Why do we need to say this? All of the shareholders of a law firm must be attorneys. Not all of our shareholders are attorneys. Thus, bar associations who are in the business of protecting their profession contact us and make us add such disclaimers to our website. They also make us say, thus we do say, should you need such services, seek the counsel of a licensed attorney, accountant or licensed advisor."

62.     Meanwhile, Defendants eschew any standard of professional responsibility. They attempt to disclaim all warranties and liability regarding their' services, limit customer remedies to refunds, and allow themselves to unilaterally modify the Terms of Service and bind customers to new and/or revised terms. These are things that an actual lawyer cannot do and that both harm consumers and allow Defendants to unfairly compete with Plaintiff without the restrictions Plaintiff freely and rightfully submits itself to.

13

*Specific Examples of Fraudulent Statements from the Websites*

63.     To perpetuate the fraudulent scheme described above, Defendants make numerous fraudulent statements and false promises on their website. While there are too many to identify all of them, here are some of the more apparent ones:

a.      "117 + years of legal expertise." Even a lawyer is supposed to be careful when calling himself an expert. A non-lawyer cannot claim legal expertise.

b.      "Safeguard your wealth from lawsuits, creditors, and all of life's legal surprises — with discreet, strategic guidance from elite legal professionals." The people performing the services and providing the guidance are not legal professionals.

c.      "Legal Services We Offer – Explore our core legal services designed to help protect your business and personal assets. From entity formation to advanced trust structures, we offer proven solutions to secure your financial future." Lawyers Limited is not offering legal services inasmuch as the services they are offering are not performed by lawyers.

d.      "Lawyers Limited offers confidential, attorney-client privileged reviews of your personal and business exposure. We implement legal structures that deter lawsuits and make your wealth inaccessible to opportunistic claimants." The reviews cannot be attorney-client privileged because they are not being performed by attorneys. And the disclaimers explicitly contradict this statement.

e.      "Your local courts do not have jurisdiction over our international law firm/ trustee." What!? If they are working with a law firm who is behind the scenes and is performing legal services for the customers, and they are accepting payment for this, then they are either engaged in the unlicensed practice of law or sharing revenue with attorneys.

f.      "Our confidential risk assessments and custom-tailored legal structures work hand-in-hand to minimize exposure, reinforce privacy, and defend your holdings against future claims." If they are custom-tailored, they are not mere document preparation or document submission services. And if, as the Terms of Service acknowledge, no privilege applies to the customer's communications with Lawyers Limited, the risk assessments cannot be confidential.

g.      "Off-the-shelf entities often fail when tested in court. That's why Lawyers Limited builds customized LLC structures that provide durable protection tailored to your needs." Again, this is more than mere document preparation or submission.

h.      "At Lawyers Limited, we bring decades of experience creating court-tested, creditor-resistant LLC structures for high-net-worth clients nationwide. We go beyond formation — providing ongoing guidance to help you maintain compliance, corporate formalities, and protective integrity." This kind of guidance can only be provided by an attorney.

i.      "Our attorneys leverage the strongest jurisdictions in the world — including Nevada, South Dakota, Delaware, Cook Islands, and Nevis — to build trusts that stand up to creditor challenges, litigation, and unforeseen life events. For high-net-worth individuals, entrepreneurs, and families, these trusts offer lasting security and peace of mind." There are no attorneys and the disclaimers explicitly contradict this statement. At one point on the website, they actually refer to "attorney(s)."

j.      "With decades of experience in asset protection, tax, and estate law…" Experience in the law suggests experience as a legal professional (lawyer).

k.      "Asset Protection Planners is managed by Lawyers Limited which was formed in 1906. We have full-time licensed attorneys and professional consultants on our staff to assist clients with their asset protection needs."

15

l.      "Attorneys on Staff Since 1906".

m.      "OffshoreCompany.com has been a trusted provider of offshore services since 1906. With decades of experience, we've helped clients establish secure, compliant, and private international structures. Our team — including attorneys and consultants — offers guidance in forming offshore companies, trusts, and accounts tailored to your needs. We've also contributed to legislation in key jurisdictions like Nevis and the Cook Islands."

n.      On the 1-800-Company website: "With over a century of experience, we make the incorporation process fast, easy, and stress-free. Our complete packages include everything from document preparation to ongoing compliance support — all tailored to your unique needs."

o.      The Companies Incorporated website states: "We offer a wide range of asset protection services and vehicles that start with privacy tools and go as far as comprehensive offshore asset protection trust plans."

p.      "Asset Protection Planners develops financial asset management programs for individuals, families, and businesses. Our licensed attorneys and professional consultants specialize in protecting financial assets and valuables from creditors, divorces, lawsuits, and judgments. For example, we assisted a physician who started a side business with another practitioner. When the business failed and his partner sued him, our planners and attorneys developed a financial management program. We established a series of trusts and companies to protect his assets from the lawsuit. Although he expected to win, he lost significantly. Fortunately, our protection measures safeguarded his life savings, earning his heartfelt gratitude."

q.      The Spanish version of the website assetprotectionplanners.com/es/ is apparently less concerned with hiding Defendants' fraudulent scheme: "Abogado de Protección

16

de Activos – Los abogados de protección de activos pasan por entender la situación, las necesidades y los riesgos de cada individuo. Usan esto para que sus clientes construyan un plan de protección que sea apropiado para el individuo o la familia. El mayor beneficio para retener a un abogado de protección de activos es contar con un profesional que entienda el sistema legal y su situación. Pueden representar sus intereses de preservación de la riqueza dentro de su nivel de comodidad. Un abogado experimentado que se especializa en la protección de activos podrá compartimentar los tipos de riesgos que usted y sus activos enfrentan. Entonces pueden establecer adecuadamente un plan sólido. Una vez que establezca un plan, debe mantenerlo. Es el trabajo de usted y su abogado asegurarse de que su plan legal esté en cumplimiento. Debe revisarlo y actualizarlo a medida que su situación financiera cambie, la familia crezca y el sistema legal se actualice. Hable con un abogado de protección de activos hoy. Hay números de teléfono y formularios de consulta en este sitio web."

### Defendants' Engagement Agreement

64.     Defendants' knowledge that they are deceptively engaged in the unauthorized practice of law is further evidenced by their engagement letter (the "Engagement Agreement").

65.     The Engagement Agreement uses terminology characteristic of an attorney-client relationship, including: "client," "representation," "withdrawal," "privileged information," and "confidential communications."

66.     The services offered include "essential tools to secure and manage your wealth, including the establishment of offshore asset protection trusts, domestic living and/or irrevocable trusts, and the formation of offshore LLCs or corporations. Additionally, it includes the creation of a Wyoming holding company and other US entities, drafting of real estate documents, compliance services, banking assistance, and investment strategy consultations."

67.     One of the specific benefits to paying their fees is "access to our global network of Trust Companies, Protectors, CPAs, Attorneys, Investment Advisors, and Bankers."

68.     After espousing language that reads like a traditional lawyer engagement agreement, the Engagement Agreement then includes a single line disclaimer buried deep in the document which is intended to manifest a false reality: "our use of the word 'firm' does not mean law firm and we are not acting in the capacity of a law firm or tax advisor."

69.     But a rose by any other name would smell as rotten. Despite this intentionally confusing and contradictory disclaimer, acting as lawyers is exactly what Defendants are doing.

70.     Defendants are perpetrating fraud on consumers, similar to the scheme Wessell perpetrated in *Alexander v. Incway Corp.*

71.     The fact that Defendants are engaged in the unauthorized practice of law is further supported by the fact the Engagement Agreement was knowingly copied from Plaintiff's.

72.     Defendants' misrepresentations are not merely incidental — these are the manifestations of systemic and intentional decision making.

### *Defendants Deliberately Hide Wessell's Identity*

73.     Wessell's face is displayed prominently on lawyerslimited.com and the Liberty Business Group websites, but he is identified only as "Our CEO." His name does not feature because when you Google his name, you quickly discover he is a fraudster.



Our CEO With Vance Amory, Premier of Nevis (1992 – 2006 and 2013 – 2017)

Asset Protection Planners CEO With Roosevelt Skerrit, Prime Minister of Dominica

Our CEO With Clément Mouamba, Prime Minister of the Republic of Congo (Brazzaville) and Our Attorney

Our CEO With Mark Brantley, Premier of Nevis (2017-present)

18

74.     Wessell also maintains social media accounts, including but not limited to a YouTube and Instagram[6] account, where he promotes and advertises asset protection services, including those of Lawyers Limited PLLC, Lawyers Limited Inc., and Asset Protection Planners (one of the Other Ventures).

75.     Just like on lawyerslimited.com, Wessell never states his name in his social media posts and YouTube videos; he identifies himself only as "The Business Guy" and CEO of Lawyers Limited Law Firm and Asset Protection Planners.

76.     Defendants deceptively omit Wessell's name on lawyerslimited.com and on Wessell's social media accounts to prevent consumers from discovering his documented involvement as the perpetrator of an asset protection scheme, which is deliberately deceptive, and the fact that he is not a lawyer.

77.     On his YouTube channel, Wessell states that Lawyers Limited "has protected over 147,000 clients and billions in assets" and refers to Lawyers Limited and Asset Protection Planners (one of the Other Ventures) as "the real experts in legal asset protection." He states that "our team . . . include[s] seasoned attorneys who have argued in court rooms" and "legal researchers tracking law changes" that are "all hand trained by me and our talented attorneys, we're licensed, bonded, and shielded by attorney client privilege." These statements are false and contradicted by Defendants' own terms and conditions and engagement agreement.

78.     Wessell's YouTube videos are littered with other false claims. To name a few, he claims he went to UCLA Law School to study asset protection, that Defendants contributed to the asset protection laws of various countries, and that Wessell personally drafted thousands of trusts.

---

[6] https://www.youtube.com/@TheBusinessGuy (last accessed on December 9, 2025). https://www.instagram.com/thebusinessguy7/ (last accessed on December 9, 2025).

79.     Wessell claims in his YouTube videos that he has been engaged in asset protection for 30 years but, according to the older videos on his YouTube channel, he actually appears to have been running and marketing a pawnshop 12 years ago.

***Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group are all Alter Egos of Wessell and Each Other***

80.     Upon information and belief, Wessell exercises complete control over Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and the Other Ventures, such that there is a unity of interest and ownership between them.

81.     Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group all share the same email address, info@lawyerslimited.com, and phone number, 1-888-234-4949.

82.     Upon information and belief, Wessell fails to observe corporate formalities for Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, including failing to hold meetings, failing to keep corporate records, and failing to maintain separate bank accounts.

83.     Upon information and belief, there is no distinction between the assets of Wessell and the assets of Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, and/or between the entities themselves.

84.     Upon information and belief, Wessell commingles the funds of Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and/or his personal funds.

85.     Upon information and belief, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group are undercapitalized.

## CLAIMS FOR RELIEF

**COUNT I – FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)**
**(All Defendants)**

86.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87.     Defendants' statements on lawyerslimited.com, assetprotectionplanners.com, offshorecompany.com, 1800company.com, companiesinc.com, and libertybusinessgroup.com constitute commercial advertising and/or commercial promotion.

88.     Defendants' statements on their websites contain false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and origin of its services, including engagement in the unauthorized practice of law.

89.     The false statements by Defendants are literally false: Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group do not have "attorneys" (plural) on staff; Lawyers Limited PLLC's services are not separate or distinct from those of Lawyers Limited Inc., Liberty Business Group, and the Other Ventures; and none of Lawyers Limited PLLC, Lawyers Limited Inc. and Liberty Business Group provide qualified legal services, contrary to its advertising and promotion of "core legal services."

90.     Defendants deceptively claim that "Since 1906, Lawyers Limited has served thousands of happy clients" on lawyerslimited.com. Upon information and belief, Defendants acquired an aged corporation established in 1906 and changed the name to Lawyers Limited to give consumers a false impression of an established corporate history. The same is true with respect to Liberty Business Group.

91.     Defendants deceptively claim that Lawyers Limited has more than 117 years of legal experience, despite only having, at most, a single lawyer on staff.

92.     Defendants' Terms of Service, as set forth on lawyerslimited.com and deceptively referred to as a "Privacy Policy", disclaims its existence as a law firm, any standard of professional responsibility, all warranties and liability regarding Defendants' services, limits customer remedies to refunds, and allows Defendants to unilaterally modify the Terms of Service and bind customers to new and/or revised terms.

93.     Defendants' Engagement Agreement uses terminology emblematic of an attorney-client relationship and engagement contract, including: "client," "representation," "withdrawal," "privileged information," and "confidential communications."

94.     Defendants' statements are also impliedly false, creating an overall impression conveyed to consumers that they are hiring a law firm. These false, misleading, and/or deceptive statements have the tendency to deceive a substantial portion of the target consumer audience or actually deceives the target consumers.

95.     Defendants' false, misleading, and/or deceptive statements are material because they are likely to influence the purchasing decision of the target consumers.

96.     Defendants' false, misleading, and or/deceptive statements are used in interstate commerce to advertise, promote, and sell asset protection services across multiple states.

97.     Defendants know that their statements are false, misleading, and/or deceptive.

98.     Defendants' false, misleading, and or deceptive statements were made with bad faith and malice or reckless indifference to Plaintiff's and consumers' interests.

99.     Plaintiff, a legitimate law firm offering asset protection legal services, has been and continues to be injured by Defendants' false, misleading, and/or deceptive statements and has sustained actual damages in the form of diverted sales, lost profits, and loss of market share in the market for legal asset protection services to the same target consumers.

100.    As a result of Defendants' conduct, Plaintiff, other competitors, and the public have been and will continue to be damaged in an amount to be determined at trial.

101.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless enjoined by this Court as provided in 15 U.S.C. § 1116.

102.    Plaintiff is entitled to an award of Defendants' profits due to sales of the falsely, misleadingly, and/or deceptively represented services, actual damages sustained by Plaintiff in the form of lost profits, and the costs of this action, pursuant to 15 U.S.C. §1117.

**WHEREFORE**, Plaintiff, Blake Harris Law, LLC, respectfully requests that this Court grant judgment in its favor and against Defendants, including the following relief:

A.      An accounting and disgorgement of Defendants' profits derived from the sale of services promoted through false or misleading statements, pursuant to 15 U.S.C. § 1117(a).

B.      An award of damages sustained as a result of Defendants' actions, including lost profits and loss of goodwill and market share caused by Defendants' false and misleading advertising, to be trebled as provided under 15 U.S.C. § 1117(a) for willful conduct.

C.      Preliminary and permanent injunctions under 15 U.S.C. § 1116, enjoining Defendants, their agents, representatives, employees, affiliates, successors, assigns, and all persons acting in concert with them from (1) holding themselves out, directly or indirectly, as a law firm, attorneys, or provider of legal services, (2) using the word "lawyers, "law firm" "legal" or any derivative of these terms in any trade name, domain name, advertisement, or other marketing materials, (3) performing any legal services, including those advertised as offered by Defendants, without licensed attorneys performing or directly supervising the performance of such services,

and (4) otherwise engaging in any unfair, deceptive, or misleading conduct in the marketing or sale of their services.

D.      An order compelling mandatory corrective advertising and communications, including but not limited to:

     I.    Public retractions and corrective statements on each of Defendants' websites, YouTube and social media channels, and any other marketing platforms used to promote their services;

    II.    Direct written notice to all clients, past and present, who executed Defendants' Engagement Agreement, expressly disclosing that none of the Defendants are, or have ever been, a law firm or authorized to provide legal services;

    III.    Direct written notice to all potential or prospective customers with whom Defendants have communicated within the last four (4) years, advising of the same; and

    IV.    Any other corrective measures necessary to dispel the false and misleading impressions created by Defendants' prior advertising and promotional materials.

E.      An award of Plaintiff's costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117(a), on the grounds that this is an "exceptional case."

F.      Pre-judgment and post-judgment interest on all monetary awards to the fullest extent permitted by law.

G.      Such other and further relief as the Court deems just and proper.

## COUNT II – DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FDUTPA
### (All Defendants)

103.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

104.    Defendants' false, misleading, and/or deceptive statements regarding the nature, characteristics, qualities, and origin of Defendants' services constitute deceptive acts or practices in violation of Section 501.204 of FDUTPA.

105.     Defendants' Terms of Service as set forth on lawyerslimited.com is presented as a "privacy policy," which is intentionally confusing and misleading in and of itself, as consumers would assume they are only consenting to data usage policies when they are agreeing to a contract that limits their legal recourse and financial protections.

106.     Defendants' business model is built on deception; they are using the credibility and professional veneer of a law firm to promote, market, advertise, and sell murky asset protection services to consumers that are not provided by qualified professionals, and ultimately manifest the unauthorized practice of law.

107.     Defendants deceptively claim that "Since 1906, Lawyers Limited has served thousands of happy clients" on LawyersLimited.com. Upon information and belief, Defendants acquired an aged corporation established in 1906 and changed the name to Lawyers Limited to give consumers a false impression of an established corporate history.

108.     Defendants actively promote, market, and advertise a law firm offering asset protection legal services, but Defendants' Terms of Service simultaneously disclaims its existence as a law firm, any standard of professional responsibility, all warranties and liability regarding Defendants' services, limits customer remedies to refunds, and allows Defendants to unilaterally modify the Terms of Service and bind customers to new and/or revised terms. In other words, Defendants are engaged in the unauthorized practice of law.

109.     Defendants' omission of Wessell's identity on lawyerslimited.com, Wessell's Instagram, and YouTube, is deliberate and meant to prevent consumers from discovering Wessell's past involvement in a fraudulent asset protection scheme.

110.     Defendants' deceptive and unfair trade practices harm consumers in the state of Florida because consumers are intentionally misled about the source and nature of the purported

asset protection services offered by Defendants. Consumers are led to believe that they are paying for and receiving legal services from licensed attorneys when they are not, are prevented from learning the identity of the persons they are receiving services from and are bound by onerous Terms of Service masquerading as a privacy policy.

111.    By engaging in the unauthorized practice of law and violating Bar rules, Defendants are committing a *per se* violation of FDUTPA. See *In re Samuels*, 176 B.R. 616, 626 (U.S. Bankruptcy Ct. M.D. Fla. 1994) (unauthorized practice of law is a violation of Florida Constitution Article V, § 15, and engagement in the unauthorized practice of law is a *per se* violation of Florida UDAP laws).

112.    Upon information and belief, Plaintiff and Defendants are each other's primary competition in this niche market.

113.    Defendants' deceptive marketing and advertising practices have caused actual damage to Plaintiff under FDUTPA by diverting business away from Plaintiff, a legitimate law firm offering asset protection legal services, resulting in a loss of market share, loss of customers, and lost profits.

114.    Upon information and belief, but for Defendants' deceptive marketing and advertising practices diverting business and customers away from Plaintiffs, Plaintiffs would have captured the majority of Defendants' business forming and funding Cook Islands trusts and would have achieved approximately $6,000,000 more in revenue over the preceding two years.

115.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless enjoined by this Court.

WHEREFORE, Plaintiff, Blake Harris Law, LLC, respectfully requests that this Court grant judgment in its favor and against Defendants, including the following relief:

A.   An award of damages sustained as a result of Defendants' actions, including but not limited to lost profits, harm to goodwill and market reputation, and/or disgorgement of Defendants' profits;

B.   An award of its reasonable attorneys' fees and costs in pursuit of this action pursuant to Fla. Stat. § 501.2105.

C.   Preliminary and permanent injunctions as permitted by Fla. Stat. §§ 501.207 and/or 501.211, enjoining Defendants, their agents, representatives, employees, affiliates, successors, assigns, and all persons acting in concert with them from (1) holding themselves out, directly or indirectly, as a law firm, attorneys, or provider of legal services, (2) using the word "lawyers, "law firm" "legal" or any derivative of these terms in any trade name, domain name, advertisement, or other marketing materials, (3) performing any legal services, including those advertised as offered by Defendants, without licensed attorneys performing or directly supervising the performance of such services, and (4) Otherwise engaging in any unfair, deceptive, or misleading conduct in the marketing or sale of their services.

D.   An order compelling mandatory corrective advertising and communications, including but not limited to:

    I.   Public retractions and corrective statements on each of Defendants' websites, YouTube and social media channels, and any other marketing platforms used to promote their services;

    II.   Direct written notice to all clients, past and present, who executed Defendants' Engagement Agreement, expressly disclosing that none of the Defendants are, or have ever been, a law firm or authorized to provide legal services;

    III.   Direct written notice to all potential or prospective customers with whom Defendants have communicated within the last four (4) years, advising of the same; and

    IV.   Any other corrective measures necessary to dispel the false and misleading impressions created by Defendants' prior advertising and promotional materials.

E.      Pre-judgment and post-judgment interest on all monetary awards to the fullest extent permitted by law.

F.      Such other and further relief as the Court deems just and proper.

### COUNT III – CIVIL CONSPIRACY
### (All Defendants)

116.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 115 of the Complaint as if fully set forth herein.

117.    Defendant Kevin Wessell, a non-lawyer, knowingly organized, directed, and participated in a concerted scheme with Defendants Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and their respective principals, to mislead consumers and unfairly compete with legitimate law firms.

118.    Defendants agreed and conspired, among other things, to:

a.   Represent to the public that they were a law firm or employed attorneys qualified to perform legal services;

b.   Use names including "Lawyers Limited", "Asset Protection Planners", and "Liberty Business Group" to create a false appearance of legitimacy and longevity;

c.   Publish false and misleading advertisements and promotional materials concerning the nature, characteristics, and origin of their services; and

d.   Engage in the unauthorized practice of law for profit while concealing the true nature and control of their operations.

119.    In furtherance of this agreement, Defendants jointly operated multiple websites and "ventures," shared offices, contact information, and communications channels, and jointly executed and enforced the Engagement Agreement with consumers.

120.    Each Defendant committed overt acts in furtherance of the conspiracy, including but not limited to disseminating false statements on websites, social media, and advertising platforms, and executing contracts falsely representing the provision of legal services.

121.    The object of the conspiracy was unlawful, in that it constituted violations of the Lanham Act (15 U.S.C. § 1125(a)), the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.), and the prohibition against the unauthorized practice of law in the State of Florida

122.    As a direct and proximate result of Defendants' conspiracy and overt acts, Plaintiff has suffered actual damages, including lost profits, diverted business, and damage to goodwill and reputation.

WHEREFORE, Plaintiff, Blake Harris Law, LLC, respectfully requests this Court grant judgment in its favor and against Defendants, joint and severally, including the following relief:

A.    Compensatory damages as a result of Defendants' conspiracy, including but not limited to actual damages, disgorgement of profits earned through the conspiracy, damage to goodwill, and lost profits.

B.    Punitive or exemplary damages as permitted by law.

C.    Pre-judgment and post-judgment interest on all monetary awards to the fullest extent permitted by law.

D.    Such other and further relief as the Court deems just and proper.

### COUNT IV – DECLARATORY JUDGMENT UNDER 22 U.S.C. § 2201
### (All Defendants)

123.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

124.    This count seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 that Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures are alter egos of each other and that each Defendant should be jointly and severally liable for the debts and obligations of the other Defendants.

125.    An actual and justiciable controversy exists between Plaintiff and Defendants regarding their separate corporate identities and liabilities. Plaintiff contends that the corporate form of each Defendant has been abused and disregarded, such that they should be treated as a single enterprise for purposes of liability.

126.    Upon information and belief, Defendant Kevin Wessell owns, dominates, and controls Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures, using them as mere instrumentalities to carry out a unified deceptive marketing and commercial scheme.

127.    Defendants jointly market and advertise themselves under the "Lawyers Limited" and "Liberty Business Group" brands, and that the "Other Ventures" are services of these companies, and represent to consumers that they are affiliated "ventures" of one another.

128.    Based on the events that took place and continue to take place, Plaintiff believes that there is a unity of interest and ownership between Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc., and it would be unfair if the acts described in this complaint are treated as those of one of the Defendants alone.

129.    It is believed that:

    a.  Defendants commingled funds and other assets, failed to segregate funds of the separate entities, and diverted corporate funds or assets to other than corporate uses;

    b.   Defendants failed to follow corporate formalities, including the maintenance of separate corporate records, holding board or shareholder meetings, or maintaining separate bank accounts;

    c.   The funds, assets, and operations of each entity are commingled and controlled by Wessell for his personal benefit and that each entity is a shell or an instrument for a single venture;

    d.   Defendants share the same offices, mailing addresses, telephone numbers, and email domains;

    e.   Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc. share owners, directors, and officers; share employees and/or attorneys; and conduct the same business;

    f.   Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures are undercapitalized, lack independent business purpose, and exist solely to facilitate Wessell's deceptive and unauthorized practice of law and to shield him and the related entities from liability.

130.   The entities' collective conduct constitutes a single business enterprise and alter ego relationship, such that respecting their separate existence would sanction fraud and promote injustice.

131.   Plaintiff has suffered and will continue to suffer injury unless the Court declares that the Defendants are alter egos of each other and jointly liable for the wrongful acts and obligations alleged herein.

WHEREFORE, Plaintiff respectfully requests that the Court enter a declaratory judgment:

A.      Declaring that Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures are alter egos and instrumentalities of one another and operate as a single business enterprise;

B.      Declaring that each Defendant is jointly and severally liable for the debts, obligations, and liabilities of the other Defendants;

C.      Declaring that the corporate veils of Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures should be pierced to prevent injustice; and

D.      Granting such other and further relief as the Court deems just, proper, and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: December 10, 2025.                    Respectfully submitted,

_/s/ David Yaffe_
David J. Yaffe, Esq.
Florida Bar No.: 125488
david@lawbyyaffe.com
**Yaffe Law**
1135 Kane Concourse, 3rd Floor
Bay Harbor Islands, FL 33154
Telephone: (305) 699-2315
www.lawbyyaffe.com
**Attorney for Plaintiff**