**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| BLAKE HARRIS LAW, LLC,<br>a Florida limited liability company, | CASE NO. 25-cv-62552 |
| *Plaintiff,*<br>vs.<br>KEVIN WILLIAM WESSELL,<br>individually and as an owner, officer or<br>manager of Lawyers Limited PLLC, Lawyers<br>Limited Inc., and Liberty Business Group,<br>Inc.,<br>LAWYERS LIMITED PLLC,<br>a Washington D.C. professional limited<br>liability company,<br>LAWYERS LIMITED INC.,<br>a Nevada corporation, and<br>LIBERTY BUSINESS GROUP, INC.,<br>a Nevada corporation, | |
| *Defendants.* | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, KEVIN WILLIAM WESSELL, individually and as an owner, officer or manager of Lawyers Limited PLLC, Lawyers Limited, and Liberty Business Group, Inc. ("Wessell"), LAWYERS LIMITED PLLC, a Washington D.C. professional limited liability company ("Lawyers Limited DC"), LAWYERS LIMITED, a Nevada corporation ("Lawyers Limited Nevada"), and LIBERTY BUSINESS GROUP, INC., a Nevada corporation ("Liberty") ("Defendants," collectively, and "Business Defendants" when not including Wessell), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Complaint filed by Plaintiff, BLAKE HARRIS LAW, LLC ("Harris"), and in support thereof state:

#3436933v1-997672.0001

## **INTRODUCTION**

Wessell is an entrepreneur and an expert in both domestic and offshore asset protection, and Wessell's Businesses offer asset protection services to their clients.  These services include domestic trusts and offshore trusts formed in the Cook Islands, the Bahamas, and other jurisdictions with demonstrably high burdens for creditors to meet in order to make claims to the trust corpus.  Harris Law is a law firm run by SHANNON BLAKE HARRIS,[1] who holds himself out as an expert in offshore asset protection.  Harris Law claims to compete with Defendants in this space.

Harris markets himself as a protector of the offshore asset protection industry, with a purported mission to remove "rotten apples" from the business.  As part of this quixotic fantasy, Harris launched an online smear campaign against Wessell and his businesses via various social media channels and public websites.  Not content with defaming and harassing Defendants, Harris has now filed this meritless lawsuit, attempting to remove a purported competitor from the offshore asset protection market.  Make no mistake about it—Harris's motives are entirely selfish, seeking to "shut[] down [his] competitor," as one of his videos is titled.

Harris has brought four (4) claims against Defendants: (I) False Advertising under the Lanham Act,[2] alleging that Defendants falsely advertise that they provide legal services that they do not, or are not able to, provide; (II) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),[3] based on the same allegations as his Lanham Act claim; (III) Civil Conspiracy, essentially alleging that Defendants conspired in the same actions giving rise to

---

[1] "Harris" shall refer both to Harris Law and Shannon Blake Harris.
[2] 15 U.S.C. § 1125(a)
[3] § 501.201, *et seq.*, Fla. Stat.

#3436933v1-997672.0001

Counts I and II; and (IV) Declaratory Judgment seeking a declaration that Defendants are alter egos of each other and should be considered one enterprise.

Each count of Harris's Complaint must be dismissed.  First, Harris has failed to allege a cause of action under the Lanham Act, as he has not alleged an injury-in-fact so as to establish Article III standing.  Harris also has not alleged false advertising and, even if he had, he has not alleged that Defendants misrepresent an inherent quality of their products or services which would affect an ordinary consumer's purchasing decisions.  Additionally, Harris's claim for violations of FDUTPA must be dismissed because Harris has not alleged actual harm to consumers, which is fatal to a FDUTPA claim.

Additionally, Harris inconsistently brings a claim against all Defendants for civil conspiracy, while simultaneously arguing that Defendants constitute one large enterprise and are essentially alter egos of each other.  Companies cannot conspire with their own agents.  Thus, Harris's own allegations bar any action for civil conspiracy.  Lastly, Harris seeks a declaratory judgment that Defendants should be jointly and severally liable for any obligations, but Harris has not created any case or controversy regarding Defendants' corporate structure.  Thus, Harris's Complaint must be dismissed in its entirety.

## FACTS

Defendant Wessell is an entrepreneur and expert in asset protection who is an officer of each of the Business Defendants.  *See* Harris's Complaint for Injunctive and Equitable Relief and Damages ("Complaint"), ¶¶ 7–11.  Lawyers Limited DC is a law firm in Washington, D.C.  *Id.* at ¶ 8.  Lawyers Limited Nevada is an inactive Nevada Corporation that has not issued shares.  *Id.* at ¶ 9.  Liberty, a Nevada corporation, helps customers form offshore trusts and LLCs.  *Id.* at ¶ 11.  Harris is a Florida attorney and the founding partner of Harris law.  *Id.* at ¶¶ 5–6.

Defendants' primary business is helping customers form offshore trusts and limited liability companies ("LLCs").  Compl., ¶¶ 21–22.  Defendants expressly disclaim the notion that their services are an adequate substitute for individual legal counsel.  *Id.* at ¶¶ 58–61.  The engagement letter that all customers sign when purchasing Defendants' services expressly provides that Defendants do not provide services that only licensed attorneys can provide.  *Id.* at ¶ 2(d).  Defendants do not operate any law offices in Florida, nor do they represent Florida clients in court or provide advice on Florida law.  Yonathan Amselem, a licensed DC attorney, is a manager of Lawyers Limited DC who assists in Defendants' asset protection services.  *Id.* at ¶¶ 47–48.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must be "facially plausible," meaning that it "allege[s] facts that are more than merely possible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability."  *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007)).

## MEMORANDUM OF LAW

**I.**  **Count I Fails to State a Cause of Action for False Advertising under the Lanham Act.**

**A.**  **Harris Does Not Have Article III Standing to Bring a Lanham Act Claim.**

Whether or not Defendants have violated the Lanham Act—which they have not—Harris's claim must be dismissed because Harris Law lacks Article III standing to sue Defendants over these alleged violations.  As the Supreme Court of the United States has instructed:

> Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III any more than, for example, Congress's enactment of a law regulating speech relieves courts of their

responsibility to independently decide whether the law violates the First Amendment.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). The Court further instructed:

> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.

*Id.* at 426–27. The recent case *MillerKing, LLC v. DoNotPay, Inc.*, 702 F. Supp.3d 762 (S.D. Ill. 2023), is illustrative on this point.

In *MillerKing*, the plaintiff ("MK") was a law firm who sued DoNotPay ("DNP"), an online subscription service that uses AI to provide a variety of legal services, although neither DNP nor its employees are licensed attorneys. *Id.* at 767. DNP offers a wide variety of legal advice and legal services, such as walking subscribers through how to dispute a traffic ticket, giving advice on the process and consequences of breaking a lease, and drafting living trusts and standardized legal documents. *Id.* MK sued DNP for a violation of the Lanham Act for false advertising, claiming that DNP "falsely represented that its legal services and products would be offered by a robot 'lawyer' and 'attorney,' which likely influenced subscribers' purchasing decisions," and that MK was "likely to be injured by the false representations, either by direct diversion of clients from themselves to DNP or by a lessening of the goodwill associated with their goods and services." *Id.* at 768. MK also sued DNP under IUDTPA, Illinois's FDUTPA equivalent, claiming that DNP "caused confusion or misunderstanding by misrepresenting its affiliation, sponsorship, and the quality of its goods and services," and that MK was "likely to be damaged by Defendant's deceptive trade practices" and "face[d] of risk [sic] of future harm with no adequate legal remedy."

*Id.*  As relief, MK sought "an injunction precluding DNP from continuing its unlawful activities and ordering it to engage in a corrective advertising campaign, and disgorgement of DNP's profits," and also requested that the court "find DNP in contempt of court, assess a civil penalty to be paid to the Illinois Equal Justice Foundation, and an award of costs, attorneys' fees, and interest."  *Id.* at 769.[4]

DNP moved to dismiss MK's suit, arguing that MK lacked both Article III standing and statutory standing under the Lanham Act.  *Id.*  In a thorough and well-reasoned opinion, the Southern District of Illinois held that MK lacked Article III standing on all of its claims against DNP.  The court emphasized that "Article III standing requires a concrete injury **even in the context of a statutory violation**."  *Id.* at 773 (quoting *TransUnion* 594 U.S. at 426).  The court held that the allegations that MK "ha[d] been or [was] likely to be injured by the direct diversion of clients from themselves to DNP or by a lessening of the goodwill associated with MK and the class's goods and services" were "insufficient to establish Article III standing." *Id.* at 771.  Despite the allegation of "direct diversion of clients," the court held that MK "ha[d] not alleged any lost revenue or added expenditures as a result of DNP's conduct. Nor ha[d] it alleged that any client or prospective client has withheld business, has considered withholding business, or has even heard of DNP." *Id.*  The Southern District of Illinois found that "MK ha[d] conflated the injury requirement for a statutory cause of action under the Lanham Act claim with Article III's injury-in-fact requirement[.]" *Id*. at 772.

---

[4] While MK also sought to bring its claims on behalf of a class of all law firms, the opinion focuses on MK's individual lack of standing, not lack of class standing.

#3436933v1-997672.0001

Particularly pertinent to the instant case, the Southern District of Illinois found that, despite MK alleging and arguing that it was a direct competitor of DNP, the parties were not actually direct competitors because they sold very different services:

> Here, MK argues that it and DNP are direct competitors in that they both offer legal services in the same legal practice areas. But unlike *Vital Proteins* [*LLC v. Ancient Brands*, No, 22 C 02265, 2023 WL 157956 (N.D. Ill. Jan. 11, 2023)], where both parties sold nearly identical collagen peptide nutritional supplements, the products here are different. **MK is a law firm employing real, licensed attorneys who appear in court before judges, represent clients, make legal arguments, and sign legal documents. MK claims to advertise its services online, but it does not provide those services online. DNP is a web-based company purporting to use AI to provide legal services virtually. In other words, while the parties participate in similar industries, they are not selling identical products. Therefore, MK's argument that the parties are "direct competitors" fails, and the Court will not presume a commercial injury for purposes of Article III standing.**

*Id.* at 773 (emphasis added).

Likewise, Harris's allegation that Harris Law is a direct competitor with Defendants does not make it so. Harris Law is a law firm, while Defendants are web-based companies that participate in similar industries, but do not offer identical products. Defendants do not represent clients in court, do not make legal arguments, and do not file legal documents. *See id.* Additionally, Harris's allegations that Harris Law is a direct competitor with Defendants are made "upon information and belief" without accompanying factual support, and are therefore not entitled to a presumption of truth. *See Funding Metrics, LLC v. Decision One Debt Relief LLC*, No. 18-81061-CIV-Bloom/Reinhart, 2019 WL 861268, at *2 (S.D. Fla. 2019) ("Factually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth."). Thus, Harris has not sufficiently alleged that Harris Law and Defendants are competitors.

While a Lanham Act plaintiff need not be a direct competitor of the defendant to allege an injury, in this case Harris claims diverted clients and lost business, which clearly requires that the

parties be competitors. Thus, the lack of competitor status is fatal to Harris's attempt to demonstrate an injury-in-fact. Whether or not Defendants have violated the Lanham Act, Harris does not have standing to bring a claim against Defendants under the statute. Thus, Count I must be dismissed.

**B.      Defendants Do Not Falsely Advertise Legal Services.**

Harris's first count asserts a claim for false advertising under § 1125(a) of the Lanham Act. The Eleventh Circuit has set forth the five-element test for this cause of action as follows:

> In order to establish the requisite likelihood of success on a false advertising claim, the movant must establish that: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising."

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008)). Notably, "[t]he court may not . . . consider multiple advertisements in an advertising campaign as a whole, as that approach assumes that consumers will be exposed to each advertisement." *Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp.3d 1220, 1230 (M.D. Fla. 2017). Thus, Harris must identify false advertising **by each Defendant**, rather than stringing all their statements together to constitute an advertising campaign.

The crux of Harris's Lanham Act claim is that Defendants falsely advertise legal services that they cannot provide, as Harris alleges that Defendants do not have sufficient attorney staffing and therefore, if Defendants provide the services they advertise, this would be unlicensed practice of law. At the outset, some federal courts have recognized that "[t]he unauthorized practice of law is not a basis for a Lanham Act claim." *Tresóna Multimedia, LLC v. Pre-Cleared Limited*, No. 25-cv-6202 (GBD), 2026 WL 480858, at *7 (S.D.N.Y. Feb. 19, 2026). Thus, to the extent Harris

argues that Defendants' advertisements are false because the services advertised cannot be performed by non-attorneys, this is not actionable under the Lanham Act.

Additionally, Defendants do not falsely advertise legal services. Despite Harris's contention, Lawyers Limited DC *is* a law firm and can offer legal services, as a nonlawyer can serve as a director, and even own, a law firm in Washington D.C. *See* Wash. D.C. Bar R. 5.4(b); *Opinion 17–1,* Fla. Bar. (Jun. 23, 2017) (noting that Washington D.C. and Washington state permit nonlawyer ownership of law firms), so long as an attorney is a member of that partnership.[5] Yonathan Amselem—whom Harris acknowledges is an attorney—is a manager of Lawyers Limited DC. Therefore, as Lawyers Limited DC is based out of and incorporated under the laws of Washington D.C., it may indeed offer the legal services described on the website.[6]

Harris circumvents the fact that Lawyers Limited DC's law firm status is permissible, and asserts that because Wessell is not an attorney, the Business Defendants must be engaged in the unauthorized practice of law. The Florida Bar defines unauthorized practice of law as when lawyers:

> (1) except as authorized by other law, establish an office or other regular presence in Florida **for the practice of law**;
>
> (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law **in Florida**; or
>
> (3) appear in court, before an administrative agency, or before any other tribunal unless authorized to do so by the court, administrative agency, or tribunal under applicable rules of the court, administrative agency, or tribunal.

R. Regulating Fla. Bar 4–5.5(b) (emphasis added).

---

[5] Available at https://www.floridabar.org/etopinions/etopinion-17-1/.
[6] Although it is outside the four corners of the Complaint, in several of Harris's social media videos he acknowledges that Washington D.C. is a jurisdiction in which a non-lawyer may jointly own a law firm.

Harris has not alleged that Defendants have law offices in Florida, that they represent that they have licensed attorneys in Florida, nor that they have ever appeared in a Florida court on behalf of any client.  Nor does Harris make such allegations for any jurisdiction other than Washington D.C., where such would be permissible so long as an attorney supervised the services.[7] Harris acknowledges that Lawyers Limited DC employs attorneys, namely Amselem.  Compl., ¶47.  Harris had not alleged that Amselem is not involved in the aspects of these services which may involve legal services, if any.

Moreover, Lawyers Limited Nevada and Liberty do not advertise legal services at all.  The Lawyers Limited website[8] conspicuously discloses: "Lawyers Limited PLLC is a law firm **based in Washington, D.C.**, serving clients nationwide and globally. **Lawyers Limited (Nevada) provides non-lawyer support services**." (Emphasis added).  Additionally, Liberty's website conspicuously states: "As all shareholders are not attorneys, the Florida Bar requires us to say that **Liberty Business Group, Inc. is not a law firm, or a substitute for an attorney or law firm. Use of our products and services are governed by our Terms and Privacy Policy**." (Emphasis added).  Thus, Harris has not identified false advertising pertaining to Defendants' services.

---

[7] Notably, it is not unauthorized practice of law for nonlawyers to "gather[] . . . the necessary information for a living trust." *The Fla. Bar v. Am. Senior Citizens Alliance, Inc.*, 689 So. 2d 255, 259 (Fla. 1997) (quoting *Fla. Bar re Advisory Opinion–Nonlawyers Preparation of Living Trusts*, 613 So. 2d 426, 427 (Fla. 1992)); *see also* R. Regulating Fla. Bar 10–2.2(b)(1) ("It is not the unlicensed practice of law for a nonlawyer to engage in a secretarial service, typing forms for self-represented persons by copying information given in writing by the self-represented person into the blanks on the form.").  Additionally, "legal form" companies have been recognized as legitimate businesses for decades.  *See* John Spiers, *Code as Counselor: How Robo-Will Platforms Are Productizing Estate Planning Services*, 27 N.C. J. L. & Tech. 237, 238 (Nov. 2025) (footnotes omitted) (noting that "[b]rand  names like Nolo's Quicken WillMaker & Trust, LegalZoom, GoodTrust, and Rocket Lawyer, have gained familiarity and increased use among middle-class Americans seeking affordable estate planning options").  Harris does not allege that this is different for formation of offshore trusts or offshore LLC, which laypersons may form themselves without an attorney at all.

[8] Harris's Complaint references Defendants' websites and discusses portions of the websites therein.  Thus, this Court may consider the websites as a whole, even though Harris has only referenced certain portions of the websites.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.").

**C.     Harris Has Not Pled False Advertising That Has a Material Effect on Purchasing Decisions.**

Additionally, even if Harris sufficiently alleged false statements in Defendants' advertising—which he has not—he still has not alleged the type of false advertising that would materially influence purchasing decisions. *See Osmose*, 612 F.3d at 1319 (citing *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)) ("Even if an advertisement is literally false, the plaintiff must still establish materiality."). To allege that the false advertising was material, the plaintiff must demonstrate that the deceptive advertising influenced the purchasing decision. *See Johnson & Johnson*, 299 F.3d at 1250 ("The materiality requirement is based on the premise that not all deceptions affect consumer decisions.").

Even at the pleading stage, a Lanham Act plaintiff still must "alleg[e] that 'the defendants misrepresented an inherent quality or characteristic of the product.'" *Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp.3d 1220, 1232 (M.D. Fla. 2017) (quoting *Johnson & Johnson*, 299 F.3d at 1250). "A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.'" *Id.* (quoting *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)).

For example, in *Motorola*, the NBA sued Motorola under the Lanham Act for allegedly deceptive advertising related to Motorola's new SportsTrax feature, which purported to provide live statistics on NBA games "direct from each arena." 105 F.3d at 855. While this statement was literally false—SportsTrax did not get information "from the arena" but from television and radio broadcasts accessible to consumers themselves—the Second Circuit found that the NBA had failed to meet the materiality requirement because consumers turned to SportsTrax for quick updates on game scores and statistics, which SportsTrax did provide regardless of "[w]hether the data [was] taken from broadcasts instead of being observed first-hand." *Id.*

#3436933v1-997672.0001

Additionally, in *Johnson & Johnson*, one alleged instance of false advertising was 1-800-Contact's statement to customers that it could not fulfill orders of Johnson & Johnson contact lenses because Johnson & Johnson had "cut off our supply of some of their products, including yours, in order to force you to buy them from an eye doctor instead of from us." *Id.* at 1249. The district court found this to be false advertising as Johnson & Johnson contracted with "eye care practitioners," which was a broader term than "eye doctors," rendering the statement literally false. *Id.* On appeal, the Eleventh Circuit was not concerned with the statement's literal falsity, and reversed a preliminary injunction nonetheless "because J&J did not prove that 1–800's use of the term 'eye doctor' was material to consumer decisions."

A review of Count I shows that Harris failed to allege a misrepresentation of an inherent quality or characteristic of the products, which is the formation of offshore trusts and limited liability companies. Harris makes the barebones allegation that "Defendants' false, misleading, and/or deceptive statements are material because they are likely to influence the purchasing decision of the target consumers," but he does not set forth which inherent quality or characteristic of the product is falsely represented. Compl., ¶ 95.

As Harris acknowledges, Defendants' websites inform customers that while Defendants can help them form offshore trusts and/or LLCs, they cannot offer specific legal or tax advice. *See* Compl., ¶– 58–59. Just as Motorola's customers did not care whether they obtained live NBA statistics from "inside the arena" or from broadcasts, so long as the statistics were accurate and updated quickly, customers in the offshore asset protection industry do not care whether their trusts or LLCs are formed by attorneys, so long as they are formed and offer the robust asset protection as advertised. Defendants do form offshore trusts and LLCs that robustly protect their customers' assets, and so Harris has not alleged any false advertising which would affect a purchasing

decision.   Defendants are not offering legal advice to clients—as Harris acknowledges, they expressly and conspicuously disclaim doing so—and are not advocating for any clients in court. Defendants merely assist customers in **forming their own offshore trusts and LLCs**.

Likewise, while Harris has alleged that the Business Defendants have made false or misleading statements about the amount of time they have been in business, this is not a material misrepresentation because Defendants do not claim to have offered asset protection services since 1906.  In fact, the terms of service, incorporated by reference into Harris's Complaint, *see* Compl., ¶ 58,[9] state:

> The current owners of the company acquired it on or about January the third in the year two thousand and eight. **The company has not been in its current line of business during its lifetime. The name of the company has changed and the company has been revived, amended and reinstated. You agree not to rely on the age of LL as a reason for conducting business with us. This entire agreement affects all current and future transactions between the parties.**

(Emphasis added). While Harris alleges these disclaimers are hidden in a "privacy policy," he also admits that these terms are part of the engagement letter which customers must sign before engaging with Defendants.  Compl., ¶ 2(d).

Additionally, while Harris alleges that consumers may believe that Defendants offer legal services when perusing their websites, this cannot affect purchasing decisions because, as Harris's Complaint acknowledges, **all customers are required to sign an engagement letter, incorporating the terms of service, before engaging Defendants and purchasing their products or services.** Compl., ¶¶ 2(d), 58. Thus, to the extent there is any false advertising on

---

[9] As these terms of service of incorporated by reference into Harris's Complaint, Defendants may reference other portions of these terms of service even though they were not referenced or attached to Harris's Complaint, as they are part of the same document incorporated by reference.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement . . . ").

Defendants' websites, which Defendants vehemently deny, any misconception is clarified before any purchase is made, which defeats Harris's false advertising claim. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (". . . [T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

Moreover, claims of false advertising must credibly allege that the ordinary consumer would be deceived by the advertising. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (alteration in original) (quoting *Haskell v. Time, Inc.,* 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)) ("[I]n view of the allegations here, the false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer."). Harris alleges that Harris Law and Defendants are competitors in the "niche market" of formation and funding of Cook Island trusts and "comprehensive asset protection services." Compl., ¶¶ 21, 23. While Defendants deny being "competitors" in this market, nonetheless, consider the "ordinary consumer" in such a market—a high net worth individual looking to secure assets of a substantial value. Harris would have this Court believe that such a person would not read the terms of service of the same company in which he or she is willing to entrust thousands—often hundreds of thousands—of dollars' worth of assets. Harris's claims rest on the implausible notion that consumers purchase Defendants' products or services without reading the terms of service or agreement they sign, both of which undermine Plaintiff's allegations of false or misleading advertising. Harris has not alleged a misrepresentation of a material aspect of the services that may affect purchasing decisions, and thus he failed to allege a claim under § 1125(a) of the Lanham Act. Count I must be dismissed.

## II.   Count II Fails to State a Claim Under FDUTPA.

### A.   There Are No Private Causes of Action for Unauthorized Practice of Law.

Similarly, Harris's FDUTPA claim is legally deficient. The crux of Harris's Complaint is that Defendants cannot perform the services they claim to offer because the services are not performed by attorneys, and therefore Defendants are engaged in the unauthorized practice of law. However, as this Court has recognized: "There exists no private right of action for the unauthorized practice of law. **Furthermore, private litigants cannot avoid this rule simply by changing the names of causes of action which in actuality are premised upon the allegation that a party engaged in the unauthorized practice of law.**" *Fabre v. Countrywide Home Loans, Inc*., 06-61593-CIV, 2007 WL 9701045, at \*2 (S.D. Fla. Feb. 2, 2007) (emphasis added), *aff'd sub nom. Gonczi v. Countrywide Home Loans, Inc*., 271 Fed. Appx. 928 (11th Cir. 2008); *see also Sigma Fin. Corp. v. Inv. Loss Recovery Service, Inc.*, 673 So. 2d 572, 573 (Fla. 4th DCA 1996) (affirming dismissal of deceptive and unfair trade practices and nuisance claims for lack of standing because conduct underlying those claims was alleged to be unauthorized practice of law). Accordingly, Harris's FDUTPA claim fails as it is based on Defendants allegedly engaging in the unauthorized practice of law, and Count II must be dismissed.

**B.     Harris Fails to Allege a Deceptive Business or Unfair Business Practice.**

To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (F1a. 2d DCA 2006). "To satisfy the first element, the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016)*. (*quoting *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 94 So. 2d 1253, 1258 (Fla. 1st DCA 2007)). "Importantly, **an act is not deceptive and a practice is not unfair unless a consumer was <u>actually</u> aggrieved by the act or practice**." *Wesley Fin. Grp., LLC v. Westgate*

*Resorts, Ltd.*, 746 F. Supp.3d 1342, 1356 (M.D. Fla. 2024) (emphasis added); *see also Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp.3d 1292, 1302 (M.D. Fla. 2017) (same).  Harris's allegation relating to consumer harm states the following:

> Defendants' deceptive and unfair trade practices harm consumers in the state of Florida because consumers are intentionally misled about the source and nature of the purported asset protection services offered by Defendants. Consumers are led to believe that they are paying for and receiving legal services from licensed attorneys when they are not, are prevented from learning the identity of the persons they are receiving services from and are bound by onerous Terms of Service masquerading as a privacy policy.

Compl., ¶ 110.

As stated above, Defendants do not falsely advertise legal services and, other than Lawyers Limited DC—which *is* a law firm—the Business Defendants do not claim that their services are performed by legal professionals. Consumers are not led to believe an attorney is performing every aspect of the services done for them, but only that attorneys affiliated with Defendants have provided the framework under which Defendants operate. Moreover, the disclaimers to which any consumer **must agree** before purchasing Defendants' products or services expressly disclaim the notion that Defendants' products and services are an adequate substitute for legal counsel. Additionally, even if consumers believe they are receiving legal services in the formation of offshore trusts and LLCs, Harris has not identified how this is actually harmful to consumers. Harris does not allege that Defendants charge higher rates than non-attorneys do, nor that any alleged lack of attorneys renders any aspect of the foreign trusts or LLCs defective.  Thus, assuming, *arguendo*, that consumers are given the false impression their offshore trusts and LLCs are being formed by attorneys, this is still not actionable under FDUTPA because there is no resultant harm to consumers.  Harris's allegations of harm to his own business are insufficient without harm **to consumers.**  *See Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm*

*Beach Cnty., Inc.*, 169 So. 2d 164, 169 (Fla. 4th DCA 2015) (". . . [T]he claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim[.]"); *Stewart Agency, Inc. v. Arrigo Ents., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019) ("While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer."). This requirement applies to equitable relief sought under FDUTPA as well. *Stewart Agency*, 266 So. 3d at 214 (emphasis added) ("[T]o state a claim for equitable relief [under FDUTPA], an entity must show (1) that it is aggrieved, in that its rights have been, are being, or will be adversely affected, by (2) a violation of FDUTPA, meaning an unfair or deceptive practice **which is injurious to consumers**.").[10]

Additionally, consumers are not "prevented from learning the identity of the persons they are receiving services from." Consumers speak directly with Defendants' employees, and Harris has not alleged that these employees use false identities. While Wessell is typically identified only as the "CEO" and not by his name, this is hardly deceptive or false—the websites use actual pictures of Wessell, and do not claim that this "CEO" is anyone other than Kevin Wessell. The websites link to Wessell's YouTube channel, "The Business Guy," where he posts several informative videos about asset protection and finances. Thus, even though they may not know his name, consumers may learn plenty of information about Wessell and evaluate his information for accuracy and credibility before engaging with the Business Defendants. Additionally, Defendants do not make misrepresentations about Wessell, but rather only fail to identify him by name.

---

[10] For this reason, Harris's citation to *In re Samuels*, 176 B.R. 616 (Bankr. M.D. Fla. 1994), is inapposite, as *Samuels* involved a debtor who was actually harmed by the defendant's incorrect legal advice. *Id.* at 619.

#3436933v1-997672.0001

Lastly, consumers are not harmed by Defendants' terms of service. As Harris alleges, the engagement letter that consumers ultimately sign before engaging Defendants requires them to agree to the terms of service, which include disclaimers that Defendants are not performing legal services and that any information provided is not a sufficient substitute for legal counsel. Compl., ¶¶ 2(d), 58. Thus, Harris has failed to state a cause of action under FDUTPA, and Count II must be dismissed.

III.   **Harris's Claim of Civil Conspiracy is Barred by the Intracorporate Conspiracy Doctrine.**

In Count III, Harris asserts that all Defendants are engaged in a conspiracy "to mislead consumers and unfairly compete with legitimate law firms." Compl., ¶ 117. However, elsewhere in the Complaint, Harris alleges:

> 80.   Upon information and belief, Wessell exercises complete control over Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and the Other Ventures, such that there is a unity of interest and ownership between them.

> 81.   Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group all share the same email address, info@lawyerslimited.com, and phone number, 1-888-234-4949.

> 82.   Upon information and belief, Wessell fails to observe corporate formalities for Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, including failing to hold meetings, failing to keep corporate records, and failing to maintain separate bank accounts.

> 83.   Upon information and belief, there is no distinction between the assets of Wessell and the assets of Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, and/or between the entities themselves.

> 84.   Upon information and belief, Wessell commingles the funds of Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, and/or his personal funds.

Compl., ¶¶ 80–84. Additionally, as grounds for declaratory relief in Count IV, Harris alleges:

#3436933v1-997672.0001

124. . . . Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures are alter egos of each other and that each Defendant should be jointly and severally liable for the debts and obligations of the other Defendants.

125. An actual and justiciable controversy exists between Plaintiff and Defendants regarding their separate corporate identities and liabilities. Plaintiff contends that the corporate form of each Defendant has been abused and disregarded, such that they should be treated as a single enterprise for purposes of liability.

126. Upon information and belief, Defendant Kevin Wessell owns, dominates, and controls Lawyers Limited PLLC, Lawyers Limited Inc., Liberty Business Group, Inc., and the Other Ventures, using them as mere instrumentalities to carry out a unified deceptive marketing and commercial scheme.

127. Defendants jointly market and advertise themselves under the "Lawyers Limited" and "Liberty Business Group" brands, and that the "Other Ventures" are services of these companies, and represent to consumers that they are affiliated "ventures" of one another.

128. Based on the events that took place and continue to take place, Plaintiff believes that there is a unity of interest and ownership between Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc., and it would be unfair if the acts described in this complaint are treated as those of one of the Defendants alone.

Thus, by Harris's own allegations, any claim for civil conspiracy is barred by the intracorporate conspiracy doctrine. It is well established that this doctrine "forecloses an 'actionable conspiracy between an entity and its officers or agents.'" *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020) (quoting *Hoon v. Pate Constr. Co.*, 607 So. 2d 423, 430 (Fla. 4th DCA 1992)). "Pursuant to the intra-corporate conspiracy doctrine, 'a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.'" *Taylor v. Serv. Corp. Int'l*, No. 20-CIV-60709-RAR, 2021 WL 6752504, at *2 (S.D. Fla. Mar. 31, 2021) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). "Moreover, 'subsidiaries of parent corporations are not generally considered separate legal entities for the purpose of the intra-

corporate conspiracy doctrine.'" *Id.* (quoting *Rossi v. Darden*, No. 16-21199, 2016 WL 11501449, at *8 (S.D. Fla. July 19, 2016)).

Harris's own Complaint alleges that Defendants are simply alter egos of each other and essentially one and the same. It follows that Defendants cannot have been engaged in a conspiracy with each other. *See Wyndham Vacation Ownership, Inc. v. Square One Development Grp., Inc.*, No. 6:20-cv-643-RBD-EJK, 2021 WL 8533474, at *3 (M.D. Fla. Aug. 18, 2021) (internal citation omitted) (emphasis added) ("Here, Plaintiffs allege all Organizational Defendants are alter egos of one another (and of Defendants George and LouAnn Reed), 'operating in unison for the purpose of effectuating the same common scheme such that the conduct of any one of them is attributable to each of the others.' **If these allegations are taken as true, Plaintiffs cannot maintain a conspiracy claim because, by their own pleadings, the Defendants do not operate independently but rather should be considered the same entity—and an entity cannot conspire with itself**."). As Harris himself alleges that Defendants are a single enterprise, Defendants therefore could not have conspired with each other as a person cannot conspire with himself, and Count III must be dismissed.

## IV.   Harris Does Not Meet the "Case or Controversy" Requirement for a Declaratory Judgment.

In Count IV, Harris seeks a declaratory judgment that Defendants are alter egos of each other and should be jointly and severally liable for each other's debts and obligations. However, although Harris makes the barebones allegation that "[a]n actual and justiciable controversy exists between Plaintiff and Defendants regarding their separate corporate identities and liabilities[,]" Compl. ¶ 125, he has not demonstrated any such controversy, which is fatal to Count IV.

"An essential element for a declaratory judgment action is the existence of an 'actual controversy' between the parties, a term which holds the same meaning as the cases and

controversies requirement of Article III to the United States Constitution." *Laboss Transp. Servs., Inc. v. Global Liberty Ins. Co. of N.Y.*, 188 F. Supp.3d 1320, 1331 (S.D. Fla. 2016) (citation omitted). Implicit in this rule is that there must be an actual controversy related to the request for declaratory judgment. By filing a complaint against Defendants for false advertising and FDUTPA violations, Harris created an actual controversy as to whether Defendants were engaged in such conduct. However, this does not place Defendants' corporate structure into controversy. Additionally, while Count III does concern Defendants' corporate structure, it alleges that they are separate entities engaged in a conspiracy, so it cannot create a controversy as to whether Defendants are alter egos.

The allegations in Count IV essentially allege that a declaration of several and joint liability is required because otherwise Harris may face difficulty collecting any judgment. However, this is based on the speculative outcome in which Harris obtains a monetary judgment against Defendants. A request for declaratory judgment cannot be based on speculation, or even a "well-founded" concern. *See Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp.2d 1338, 1344 (M.D. Fla. 2012). As there is no present case or controversy concerning between Harris and Defendants specifically pertaining to Defendants' corporate structure, Count IV must be dismissed.

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Harris's Complaint.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic mail on this 9th day of March, 2026, to David J. Yaffe of Yaffe Law at david@lawbyyaffe.com.

By: <u>*/s/ Seth J. Donahoe*</u>
Seth J. Donahoe, Esq.

Page **21** of **22**

Fla. Bar No.: 1004133
David A. Levine, Esq.
Fla. Bar No.: 1040431
sjd@trippscott.com
dal@trippscott.com
sgc@trippscott.com
eservice@trippscott.com
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, FL 33301

#3436933v1-997672.0001