UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-62552CIV-WPD

BLAKE HARRIS LAW, LLC,
a Florida limited liability company,

Plaintiff,

v.

KEVIN WILLIAM WESSELL,
individually and as an owner, officer or manager of Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc.,
LAWYERS LIMITED PLLC,
a Washington D.C. professional limited liability company,
LAWYERS LIMITED INC.,
a Nevada corporation, and
LIBERTY BUSINESS GROUP, INC.,
a Nevada corporation,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

THIS CAUSE is before the Court upon Defendants Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc. (collectively, "Defendants")'s Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"), filed herein on June 10, 2026 [DE 23]. The Court has carefully considered the Motion [DE 23], Plaintiff Blake Harris Law, LLC ("Plaintiff")'s Response in Opposition [DE 24], Defendants' Reply [DE 27], and is otherwise fully advised in the premises. The Court held a hearing on the Motion on September 21 2026, in which the Court heard argument from counsel. *See* [DE 32].

## I. BACKGROUND:

On December 10, 2025, Plaintiff Blake Harris Law, LLC ("Plaintiff") filed a Complaint for Injunctive and Equitable Relief and Damages, and Demand for Jury Trial against Defendants Kevin Wessell, Lawyers Limited PLLC, Lawyers Limited Inc., and Liberty Business Group, Inc. (collectively, "Defendants"). [DE 1]. Therein, Plaintiff alleged that Defendants are engaged in a "fraudulent scheme" via their "Lawyers Limited" business, whereby they mislead customers into thinking Defendants will provide them legal services from experienced asset protection lawyers when in fact Defendants do not provide the services that a licensed attorney provides. *See generally* [DE 1]. Plaintiff, an asset protection lawyer in Florida, alleged that he is a direct competitor of Defendants and that he is being harmed by Defendants' false advertising scheme against consumers in the market for asset protection services. The Complaint alleged the following claims against all Defendants: Count I – False Advertising under the Lanham Act, 15 U.S.C. § 1125(a); Count II – Deceptive and Unfair Trade Practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Count III – Civil Conspiracy; and Count IV – Declaratory Judgment under 22 U.S.C. § 2201. *See* [DE 1].

On March 12, 2026, Defendants moved to dismiss the Complaint. *See* [DE 10]. On May 7, 2026, following full briefing and a hearing, the Court granted Defendants' Motion to Dismiss. *See* [DE 18]. The Court held that the Lanham Act claim (Count I) failed for lack of Article III standing and, additionally or alternatively, failed to state a claim. *See* [DE 18] at pp. 4-7. In particular, the Court held that, even if Plaintiff could remedy the lack of Article III standing issue, the underlying allegations were not actionable under the Lanham Act, as Plaintiff has merely reimagined an unauthorized practice of law claim into a Lahman Act claim, which fails

as a matter of law. *See id.* Accordingly, the Court dismissed the Lanham Act claim. without prejudice, with leave to amend. Additionally, the Court ruled that, as Counts II- IV, Plaintiff's claims for FDUTPA, Civil Conspiracy, and Federal Declaratory Judgment, are before this Court only pursuant to supplemental jurisdiction under 28 U.S.C. § 1367 as related claims to Plaintiff's Lanham Act claims, *see* [DE 1] at ¶ 13, the Court would not address whether these claims fail to state a claim in the absence of a viable federal claim. *See id.* at p. 7.

On May 20, 2026, Plaintiff filed an Amended Complaint for Injunctive and Equitable Relief and Damages, and Demand for Jury Trial. *See* [DE 19]. The Amended Complaint alleges the following claims against all Defendants: Count I – False Advertising under the Lanham Act, 15 U.S.C. § 1125(a); Count II – Deceptive and Unfair Trade Practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Count III – Civil Conspiracy; and Count IV – Declaratory Judgment under 22 U.S.C. § 2201. *See* [DE 19]. Therein, Plaintiff alleges that Defendants are engaged in a "fraudulent scheme" via their "Lawyers Limited" business, whereby they mislead customers into thinking Defendants will provide them legal services from experienced asset protection lawyers and that customers will receive the level of services associated with hiring a law firm when in fact Defendants have at most a single lawyer on staff, and are not a law firm. *See generally* [DE 19]. Plaintiff, an asset protection lawyer in Florida, alleges that he is the primary direct competitor of Defendants and that he is being harmed by Defendants' false advertising scheme against consumers in the market for asset protection services. *See* [DE 19] at ¶ 114 ("But for Defendants' deceptive marketing and advertising practices that divert business and customers away from Plaintiff, Plaintiff would have captured the majority of Defendants' business forming and funding Cook Islands trusts and

would have achieved, upon information and belief, approximately $6,000,000 more in revenue over the preceding two years.").

On June 10, 2026, Defendants moved to dismiss the Amended Complaint. *See* [DE 23]. The Motion is now ripe for review. *See* [DE's 23, 24, 27]. For the reasons stated below, the Court **GRANTS** the Motion.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## III. DISCUSSION

Defendants move to dismiss the Amended Complaint [DE 1] on the following grounds: (1) the Lanham Act claim (Count I) still fails to state a claim, as it again merely sounds in an impermissible unlicensed practice of law claim; (2) the Lanham Act claim (Count I) still fails to state a claim, as it again fails to allege a material misrepresentation; (3) the FDUTPA claim fails to state a claim because there are no private causes of action for unauthorized practice of law and/or for failure to allege actual harm to consumers; (4) the Civil Conspiracy claim (Count III) is barred by the intracorporate conspiracy doctrine based upon the allegations in the Amended Complaint because Plaintiff alleges that Defendants operate as one until and are mere alter egos of each other and an entity cannot conspire with itself; and (5) the federal Declaratory Judgment claim (Count IV), seeking a declaration of several and joint liability based on Defendants being alter egos of each other, does not meet the Article III "Case or Controversy" Requirement.

As explained below, the Lanham Act claim (Count I) again fails to state a claim. Accordingly, the Court will dismiss the Lanham Act claim, this time with prejudice. Additionally, as Counts II- IV, Plaintiff's claims for FDUTPA, Civil Conspiracy, and Federal Declaratory Judgment, are before this Court only pursuant to supplemental jurisdiction under 28 U.S.C. § 1367 as related claims to Plaintiff's Lanham Act claims, *see* [DE 19] at ¶¶ 18-19, the Court will decline supplemental jurisdiction over these claims in the absence of a viable federal claim. *See infra* Section 2.

### 1. Count I – Lanham Act False Advertising Claim

In dismissing the Lanham Act claim (Count I) from the original Complaint, the Court held that the Lanham Act claim failed for lack of Article III standing and, additionally or

alternatively, failed to state a claim. *See* [DE 18] at pp. 4-7. In particular, the Court held that, even if Plaintiff could remedy the lack of Article III standing issue, the underlying allegations were not actionable under the Lanham Act, as Plaintiff has merely reimagined an unauthorized practice of law claim into a Lahman Act claim, which fails as a matter of law:

> The basis for Plaintiffs' false advertising claim is that Defendants are falsely advertising legal services that they cannot provide, falsely advertising that they are a law firm, falsely advertising that they provide legal services through attorneys; however, the unauthorized practice of law is not the basis for a Lanham Act claim. *See, e.g., Tresona Multimedia, LLC v. Pre-Cleared Ltd.*, No. 25-CV-6202 (GBD), 2026 WL 480858, at *7 (S.D.N.Y. Feb. 19, 2026) ("The unauthorized practice of law is not a basis for a Lanham Act claim."). While Plaintiff argues that his Lahman Act claim is not a reimagined unauthorized practice of law claim, the Court disagrees.

[DE 18] at pp. 7-8.

Defendants now move to dismiss Plaintiff's Lanham Act § 1125(a) false advertising claim (Count I) as re-pled in the Amended Complaint [DE 18], arguing that the Lanham Act claim still fails to state a claim on the grounds that (1) it again merely sounds in an impermissible unlicensed practice of law claim; and (2) it again fails to allege a material misrepresentation. The Court addresses each of these arguments, in turn.

The five-element test for a Lanham Act § 1125(a) false advertising claim as established by the Eleventh Circuit is as follows:

> In order to establish the requisite likelihood of success on a false advertising claim, the movant must establish that: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising."

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010).

### A. <u>Whether the Lanham Act claim is again an impermissible UPL claim</u>

First, Defendants argue that the Lanham Act claim still fails to state a claim because it again merely sounds in an impermissible unlicensed practice of law claim. *See Tresona Multimedia, LLC v. Pre-Cleared Ltd.*, No. 25-CV-6202 (GBD), 2026 WL 480858, at *7 (S.D.N.Y. Feb. 19, 2026) ("The unauthorized practice of law is not a basis for a Lanham Act claim."); *Fabre v. Countrywide Home Loans, Inc.*, No. 06-61593-CIV, 2007 WL 9701045, at *2 (S.D. Fla. Feb. 2, 2007), *aff'd sub nom. Gonczi v. Countrywide Home Loans, Inc*., 271 F. App'x 928 (11th Cir. 2008) ("There exists no private right of action for the unauthorized practice of law. Furthermore, private litigants cannot avoid this rule simply by changing the names of causes of action which in actuality are premised upon the allegation that a party engaged in the unauthorized practice of law."). As explained below, the Court agrees with Defendants.

It appears from the allegations in the Amended Complaint that the basis for Plaintiffs' Lanham Act false advertising claim is that Defendants are falsely advertising that they can provide the same services as Plaintiff's law firm. The Amended Complaint alleges, *inter alia*:

> 2. Defendants have created the illusion of operating an asset protection firm called "Lawyers Limited" without the constraints associated with a legitimate law firm. Defendants use the professional veneer and credibility of a law firm to market and sell their services, purposefully lulling consumers into a false sense of security to induce them to purchase their services **instead of the services of legitimate law firms like Plaintiff.**
>
> 4. The gist of the scheme complained of is that Defendants create the false appearance that they are a law firm and are offering services that, whether the practice of law or not, are **meant to substitute for the services that legitimate law firms like the Plaintiff offer**. **There is a certain premium associated with engaging a law firm, even when the services to be performed are not legal services.** Defendants falsely advertise that they provide that premium when they really do not. Defendants' advertising further creates the false impression that consumers are engaging a law firm and receiving the protections, professional obligations, and legal representation associated with retaining licensed attorneys,

> when they are not.
>
> 10. Defendants' practices described herein also target and harm Plaintiff, specifically. **Plaintiff is a legitimate, licensed law firm employing attorneys who are actually qualified to perform the services it advertises, including the ones Lawyers Limited falsely advertises that it offers.** Defendants' practices described herein have and continue to unfairly compete with Plaintiff and divert business away from Plaintiff, resulting in lost profits.
>
> 33. During sales communications, Defendants have compared Defendants' services to Plaintiff's services (including by mentioning Plaintiff by name), specifically discouraged consumers from retaining Plaintiff, **and represented to consumers that Defendants could provide the same asset protection services as Plaintiff at a lower cost as a means to earn their business and divert business away from Plaintiff.**
>
> 34. **Defendants' advertising, branding, and sales process misleads consumers into believing that Defendants operate as a law firm.**
>
> 35. Defendants' false and misleading advertising and sales practices have caused concrete and particularized commercial injury to Plaintiff, including diversion of prospective customers, lost business opportunities, lost revenue, increased marketing and client procurement costs, and damage to Plaintiff's commercial interest in providing **legal asset protection services** to consumers in the relevant market.
>
> 100. Defendants use the professional veneer and credibility of a law firm to market and sell their services, purposefully lulling consumers into a false sense of security to induce them to purchase their services **instead of the services of legitimate law firms like Plaintiff.**

[DE 19] at ¶¶ 2, 4, 10, 33–35, 100 (emphasis added).

Plaintiff cannot have it both ways: to allege individualized harm to support Article III standing (in attempt to cure the basis for the Court's prior dismissal of the Lanham Act claim), Plaintiff has alleged that Defendants diverted prospective clients by falsely advertising that they could provide the same services as Harris's law firm; but that theory necessarily depends on the premise that those services are legal services Defendants were not authorized to provide because they are not lawyers and not a law firm, which is squarely a claim for unauthorized practice of

law over which the Florida Bar has exclusive jurisdiction.

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers, P.A.*, 2023 WL 7109914 (S.D. Fla. Oct. 27, 2023), upon which Plaintiff heavily relies, is readily distinguishable. In that case, following a bench trial, the district court held that "the statements to owners that an attorney will provide an exit for them are false or misleading because Lawyer Defendants merely send two letters to Bluegreen that they know will not effectuate an exit. They then sit back and wait for an owner to default on his or her loan in order for the owner to be 'exited' from their Bluegreen contract." *Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-CIV, 2023 WL 7109914, at *25 (S.D. Fla. Oct. 27, 2023). Thus, the false advertising in *Bluegreen* concerned lawyers advertising services they were not actually providing. *Bluegreen* does not stand for the proposition that a Lanham Act claim may be based on UPL.

Additionally, the Supreme Court's reasoning in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), that the Food, Drug, and Cosmetic Act ("FDCA") does not preclude a private party from bringing a Lanham Act claim challenging as misleading a food label that is regulated by the FDCA, is inapplicable to the instant case. In *POM*, the Supreme Court held that the Lanham Act claim for falsely advertising a "pomegranate and blueberry" drink which contained miniscule amounts of pomegranate or blueberry was not preempted by the FDCA simply because food and beverage labelling was involved. *Id.* at 120–21. The Court noted that the FDA did not necessarily enforce all objectionable labels, meaning that private enforcement under the Lanham Act actually furthered the FDCA's objectives, and the Lanham Act claim did not require the court to make a threshold regulatory determination committed to another body. Here, in contrast, Plaintiff has not argued that a Florida Bar action is not an appropriate or

effective mechanism for enforcing UPL prohibitions and legal advertising regulations. Moreover, Plaintiff's allegations that Defendants falsely advertise the capability to offer the same services as Plaintiff's law firm requires the Court to determine, as a predicate to Plaintiff's Lanham Act claim, whether Defendants' advertised services constitute the unauthorized practice of law, a determination that Florida law reserves to the Florida Supreme Court and the Florida Bar.

Based on the foregoing, the Lanham Act claim still fails to state a claim because it again merely sounds in an impermissible unlicensed practice of law claim.

### B. Whether the Lanham Act claim fails to allege a material misrepresentation

Second, Defendants argue that the Lanham Act claim still fails to state a claim because it again fails to allege a material misrepresentation, *i.e.*, that Defendants misrepresent an inherent quality of their products or services.

"Even if an advertisement is literally false, the plaintiff must still establish materiality." *Osmose*, 612 F.3d at 1319 (citing *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)). Even at the pleading stage, a Lanham Act plaintiff still must "alleg[e] that 'the defendants misrepresented an inherent quality or characteristic of the product.'" *Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp.3d 1220, 1232 (M.D. Fla. 2017) (quoting *Johnson & Johnson*, 299 F.3d at 1250) (quoting *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841, 855 (2nd Cir. 1997)).

Here, Defendants argue that the Complaint fails to allege a misrepresentation of an inherent quality or characteristic of the products, which is the formation of offshore trusts and limited liability companies.

In Response, Plaintiff argues that materiality is adequately pled and furthermore is a

question of fact about consumer behavior, not a logical deduction, and cannot be resolved against Plaintiff on the pleadings. Plaintiff maintains that who performs a service (e.g. a law firm and attorneys, or non-lawyers) is an "inherent quality or characteristic" of any service, even a non-legal service. Plaintiff contends in his Response that the question is whether Defendants truthfully advertised who would perform the product or service the consumer is buying. *See* [DE 24] at p. 9 ("Defendants obviously place value on advertising that the people who are performing the services the customers receive are attorneys. That value is advertised but is not actually offered. Selling form-based work under false pretenses as the work of a law firm and its attorneys is false, whether or not a non-lawyer could lawfully do that work."). Plaintiff cites to the allegations at ¶¶ 4, 36–38 of the Amended Complaint to demonstrate that he sufficiently alleged materiality -- a consumer purchasing complex offshore asset-protection structures can rationally put a premium on retaining a law firm even for tasks a non-lawyer could perform, because law-firm engagement carries attorney-client privilege, confidentiality, standards of professional responsibility, Bar oversight, malpractice protection, and fiduciary duties. Plaintiff further contends that whether consumers care about those attributes is a factual question provable by survey evidence, consumer testimony, and Defendants' own marketing data.

The Amended Complaint alleges that the purported misrepresentation is that Defendants are not actually a law firm, even while at the same time conceding that the services being performed are not legal services:

> The gist of the scheme complained of is that Defendants create the false appearance that they are a law firm and are offering services that, whether the practice of law or not, are meant to substitute for the services that legitimate law firms like the Plaintiff offer. **There is a certain premium associated with engaging a law firm, even when the services to be performed are not legal services.** Defendants falsely advertise that they provide that premium when they

> really do not. Defendants' advertising further creates the false impression that consumers are engaging a law firm and receiving the protections, professional obligations, and legal representation associated with retaining licensed attorneys, when they are not.

[DE 19] at ¶ 4 (emphasis added).

Even assuming, *arguendo*, that Plaintiff sufficiently alleged that Defendants lead consumers to believe they are a law firm, the Court finds that the Amended Complaint has not plausibly alleged how this is materially false or misleading. *See Johnson & Johnson*, 299 F.3d at 1250 ("To succeed on a claim of false advertising, the plaintiff must establish that 'the defendant's deception is likely to influence the purchasing decision.' . . . The materiality requirement is based on the premise that not all deceptions affect consumer decisions.") (citation omitted). If the services at issue are not legal services, then it is not material whether they are performed by lawyers. *See, e.g., Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 854 (2nd Cir. 1997) (affirming dismissal of false advertising claim at motion to dismiss stage where press release stating that basketball scores "direct from each arena" was false but the district court determined it was not material to consumers because "[t]he inaccuracy in the statements would not influence consumers at the present time, whose interest in obtaining updated game scores on pagers is served only by SportsTrax. Whether the data is taken from broadcasts instead of being observed first-hand is, therefore, simply irrelevant.").

Finally, even at the pleading stage, the Court need not accept Plaintiff's allegations that "[t]here is a certain premium associated with engaging a law firm, even when the services to be performed are not legal services," [DE 19] at ¶ 4, and "Consumers seeking asset protection services care whether their trusts and protection vehicles are created by attorneys and whether their specific situation is monitored by attorneys through the asset protection process" [DE 19] at

¶ 37, as these are merely conclusory allegations. The Court notes that these allegations are contradicted by other allegations in the Amended Complaint that Defendants (not a law firm) charge a lower cost to consumers than Plaintiff (a law firm) for the same asset protection services. *See* [DE 19] at ¶ 33 ("During sales communications, Defendants have compared Defendants' services to Plaintiff's services (including by mentioning Plaintiff by name), specifically discouraged consumers from retaining Plaintiff, and represented to consumers that Defendants could provide the same asset protection services as Plaintiff at a lower cost as a means to earn their business and divert business away from Plaintiff."). Furthermore, if (as pled) this claim does not involve legal services, none of the considerations factored into this purported "law firm premium" apply. For example, there is no attorney-client privilege or confidentiality in non-legal work, even if performed by an attorney *See, e.g., Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*, 195 F. Supp.3d 639, 644 (D. Del. 2016) ("If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege."); *In re Processed Egg Products Antitrust Litigation*, 278 F.R.D. 112, 117 (E.D. Pa. 2011) ("The privilege protects '[c]onfidential disclosures by a client to an attorney made in order to obtain *legal assistance.*'") (emphasis added). Accordingly, the Court finds that the Lanham Act claim fails to allege a material misrepresentation.

Based on the foregoing, Plaintiff's Lanham Act § 1125(a) false advertising claim (Count I) shall be dismissed for failure to state a claim. The Lanham Act claim again merely sounds in an impermissible unlicensed practice of law claim and it fails to allege a material misrepresentation. Additionally, as Plaintiff is represented by counsel and has already been given

an opportunity to amend his Lanham Act claim, this dismissal is with prejudice. *See, e.g., Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so.").

**2. Counts II- IV (FDUTPA, Civil Conspiracy, Federal Declaratory Judgment)**

In addition to the federal Lanham Act claim in Count I, Plaintiff alleges claims in Counts II-IV for FDUTPA, Civil Conspiracy, and Federal Declaratory Judgment. In view of the fact that this Court's jurisdiction over this action rests solely on federal question, *see* [DE 19] at ¶¶ 18-19, and Plaintiff has failed to state a claim under the Lanham Act, the only federal cause of action in his Amended Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's supplemental jurisdiction causes of action, and Plaintiff may instead pursue those claims in state court.[1]

## IV. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint [DE 23] is **GRANTED** as set forth herein;

2. Count I of the Amended Complaint, alleging a violation of the Lanham Act, is

[1] Although supplemental jurisdiction may be exercised over state law claims related to federal claims in any action in which the Court has original jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted); *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999). *See also* 28 U.S.C. § 1367(c)(3).

hereby **DISMISSED WITH PREJUDICE**;

3. The Court declines to exercise supplemental jurisdiction over Counts II-IV of the Amended Complaint, alleging claims for FDUTPA, Civil Conspiracy, and Federal Declaratory Judgment;

4. The Clerk shall **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of September, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record